# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

KERON D. SIMPSON,

                Petitioner,           :    Case No. 3:17-cv-298

      - vs -                          District Judge Thomas M. Rose
                                      Magistrate Judge Michael R. Merz

WARDEN,
  Lebanon Correctional Institution,
                                  :
                Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This habeas corpus case is before the Court for decision on the merits. Counsel who had represented Simpson in post-conviction filed the Petition on his behalf on August 29, 2017 (ECF No. 1). On the Court's Order to do so, Respondent has filed the State Court Record (ECF No. 7) and a Return of Writ (ECF No. 8). The case became ripe on the filing of Petitioner's Reply (ECF No. 15), filed by replacement counsel.

Simpson seeks relief from his conviction in the Montgomery County Common Pleas Court for murder with specifications, twelve counts of aggravated robbery with specifications, and possession of a weapon while under a disability (Petition, ECF No. 1, PageID 4).

## Procedural History

On April 29, 2011, the Montgomery County Grand Jury indicted Simpson on two counts of murder with a firearm specification, twelve counts of aggravated robbery with a firearm

1

specification, and one count of having a weapon while under a disability (State Court Record, ECF No. 7, Ex. 1). Simpson was convicted on all counts. *Id.* at Ex. 10. He was sentenced to fifteen years to life imprisonment on the murder convictions, ten years on each of the aggravated robbery convictions, and thirty-six months on the weapons charge, all to be served concurrently, with a mandatory three-year consecutive sentence on the firearm specification. *Id.*, Ex. 11.

Simpson appealed to the Second District Court of Appeals which affirmed the convictions and sentence. *State v. Simpson*, 2013-Ohio-1072, 2013 Ohio App. LEXIS 956 (2nd Dist. Mar. 22, 2013)("*Simpson Direct*"). Simpson did not appeal further to the Ohio Supreme Court.

On October 30, 2012, Simpson, with the assistance of counsel who initially represented him in this case, filed a petition for post-conviction relief under Ohio Revised Code § 2953.21. (State Court Record, ECF No. 7, Ex. 18). The trial court denied the petition and Simpson again appealed to the Second District which affirmed the denial. *State v. Simpson*, 2016-Ohio-1266, 61 N.E. 2d 905, 2016 Ohio App. LEXIS 1167 (2nd Dist. Mar. 25, 2016)("*Simpson PC*"), appellate jurisdiction declined, 146 Ohio St. 3d 1490 (2016). Simpson filed the instant Petition a year later, pleading the following grounds for relief:

> **Ground One:** Petitioner's right to counsel guaranteed by the Sixth Amendment was violated at trial.
>
> **Supporting Facts:** Trial Counsel failed to investigate and secure an expert evaluation of Petitioner's mental health status. Petitioner's Trial Counsel failed to interview at least one potential witness. Petitioner's Trial Counsel failed to investigate and obtain expert assistance on the DNA evidence. Petitioner's trial counsel failed to investigate and obtain expert assistance on eyewitness identification and witness perception.
>
> **Ground Two:** Petitioner's right to a fair trial was violated by the admission of an unfair eyewitness identification.
>
> **Ground Three:** Petitioner's right against self-incrimination was violated.

(Petition, ECF No. 1, PageID 18-34).

# Analysis

**Ground One:  Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Simpson raises four sub-claims of ineffective assistance of trial counsel: (1) failure to investigate and secure an expert evaluation of Simpson's mental health status; (2) failure to interview at least one potential witness; (3) failure to investigate and obtain expert assistance on the DNA evidence; and (4) failure to investigate and obtain expert assistance on eyewitness identification and witness perception.

Respondent argues this First Ground for Relief is barred by Simpson's procedural default in not raising it on direct appeal to the Second District (Return, ECF No. 8, PageID 1956).  Simpson in his Reply insists that these four sub-claims could not have been supported by evidence in the record on direct appeal and in any event the Second District did not rely on any procedural default in deciding the post-conviction relief appeal.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner

can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

The Magistrate Judge agrees with Petitioner that the Second District's decision on appeal in post-conviction decided the merits of Simpson's ineffective assistance of trial counsel claims and did not find that he was barred by *res judicata* for not presenting them on direct appeal. Respondent's procedural default defense on the First Ground for Relief should therefore be overruled and this claim decided on the merits.

In his Reply, Simpson argues his ineffective assistance of trial counsel sub-claims separately and they will be addressed that way in this Report.

## Sub-claim 1: Failure to Pursue a Competency Evaluation

In his first sub-claim of ineffective assistance of trial counsel, Simpson asserts that he was incompetent to assist in his defense and his trial attorney's failure to bring this to the attention of the trial court was ineffective assistance. This claim was raised as the first assignment of error on collateral appeal. The Second District considered this assignment together with the third, fourth, and fifth assignments. Having overruled the third, fourth, and fifth assignments, the court wrote of the first assignment as follows:

> **[*P10]** We reach a similar conclusion with regard to Simpson's argument about trial counsel's failure to retain an expert to evaluate his mental status, which is the subject of his first assignment of error. Simpson asserts that he suffers from an intellectual disability, namely "mental retardation," that his trial counsel failed to recognize this disability or to make any "adjustment" for it, and that counsel should have retained a mental-health expert to evaluate him. He argues that counsel's failure to do so constituted ineffective assistance. In support of his post-conviction claim about the need for an evaluation of his mental status, Simpson provided the trial

court with his Dayton Public School records and Social Security Administration records. Those records show that he received low grades in school, that he participated in a special-education program, that he had a full-scale I.Q. of 53, and that he was classified as "mildly mentally retarded." He also provided an affidavit stating that his trial counsel, Bobby Joe Cox, knew he had a "learning disability." (Doc. #8 at Simpson affidavit).

 **[\*P11]**  The trial court rejected Simpson's claim for post-conviction relief based on counsel's failure to have an expert review his mental status. In support, the trial court noted that Simpson was not claiming he was legally incompetent to stand trial. Instead, he was claiming that, as a result of his deficient mental status, he could not properly waive his *Miranda* rights or assist counsel in making important trial decisions. The trial court found "significant difficulty" with such a distinction. It noted that "[t]he issues of a voluntary *Miranda* waiver, trial assistance, and trial decision making relate to competence, yet Mr. Simpson does not suggest such incompetence." (Doc. #60 at 8). The trial court then continued:

> The indicated records, which the trial court has carefully reviewed, do not, in any event, demonstrate that Mr. Simpson's level of mental functioning affected his ability to understand and knowingly and voluntarily waive his *Miranda* rights, to provide assistance to Mr. Cox, or to be involved in trial strategy decisions. Mr. Simpson, other than filing the records, has presented no evidence that Mr. Simpson's mental status affected him as suggested.

> Mr. Simpson's contention is compromised, if not dispelled, by Mr. Simpson's video captured demeanor and conduct during video recorded interviews. Mr. Simpson, despite his suggestion to the contrary, was engaged and alert during the interviews. The interviews reveal no cause for concern regarding Mr. Simpson's mental status. Mr. Cox, going first to the issue of ineffective assistance, had no reason to have Mr. Simpson's mental status evaluated based upon his assumed knowledge that Mr. Simpson had a learning disability. Further, Mr. Simpson's verbal competence and demeanor, again as reflected by Mr. Simpson's video recorded interviews, would not reasonably have alerted Mr. Cox that a mental status evaluation was appropriate. Further, Mr. Simpson, as noted, has not supplied the court with information demonstrating that Mr. Simpson's mental status compromised his ability to knowingly and voluntarily waive his *Miranda* rights, to assist counsel, and

to be involved in trial decisions. There is, upon this record, no basis upon which to conclude that Mr. Cox's performance was ineffective based upon his failure to have Mr. Simpson's mental status evaluated. It is also noted that Mr. Simpson has not presented evidence or argument demonstrating how a mental status evaluation would have affected the trial's outcome. The trial, since Mr. Simpson does not suggest he was not competent to stand trial, would have occurred even if a mental status examination had been conducted. Mr. Simpson does not suggest and the court cannot fathom how the trial's outcome would have been affected by the assumed mental status examination.

Mr. Simpson, in summary, has failed in his initial burden to demonstrate a substantial basis upon which it could be concluded that Mr. Cox was ineffective for not having Mr. Simpson's mental status evaluated or that such an examination would have affected the trial's outcome. As such, this claim may be dismissed without an evidentiary hearing through the grant of summary judgment.

(Doc. #60 at 8-9).

 **[\*P12]** On appeal, Simpson reiterates his claim that his mental status affected his ability to waive his *Miranda* rights as well as decisions such as whether to go to trial or whether to testify and his ability to assist trial counsel in presenting a defense. Therefore, he argues that his trial counsel should have investigated his mental status and retained an expert to evaluate that status after being informed that he had a "learning disability." In connection with his argument, Simpson also asserts that developmental disability or "mental retardation," which he purportedly suffers from, cannot be detected though observation by a lay person.

 **[\*P13]** Having reviewed Simpson's argument and his evidentiary materials, we see no error in the trial court's rejection of his claim without a hearing. As a preliminary matter, Simpson does not challenge the trial court's finding that his demeanor and conduct during recorded interviews gave no outward indication that his mental status was impaired. According to Simpson's affidavit accompanying his petition, defense counsel had been told only that he had a "learning disability," which Simpson acknowledges in his appellate brief "is not as bad in society's eyes as suffering from mental retardation, or as it is now defined, developmental disability." (Appellant's brief at 17). We are unconvinced that being told Simpson had a learning disability reasonably should have alerted defense counsel of the need to have his "mental status"

evaluated, particularly in light of what the trial court found to be Simpson's appropriate behavior on recorded videos. This is true even if we accept that Simpson in fact does suffer from "mild mental retardation." Simpson's own admission, that his degree of developmental disability or "mental retardation" would not be detected by a lay person, leads to the conclusion that his mental status would not have been evident to his trial counsel either.

 **[\*P14]** We also agree with the trial court that evidence of Simpson's low I.Q. and "mild mental retardation" fails to raise an issue as to his ability to assist trial counsel in making strategic decisions. The trial court found that Simpson was not claiming to be incompetent to stand trial, and Simpson has not challenged that finding on appeal. But if Simpson does not claim his mental status rendered him legally incompetent, then we fail to see the significance of, or the need for, trial counsel to have an expert evaluate his mental status. By definition, if Simpson was legally competent to stand trial, then he was sufficiently able to assist his attorney in making strategic decisions. We are unaware of any authority that would have imposed on Simpson's attorney an obligation to seek an expert opinion on his "mental status" under the circumstances before us. Moreover, we agree with the trial court that the evidentiary materials accompanying Simpson's petition—Dayton Public School and Social Security Administration records—did not provide a substantial basis for concluding that Simpson's mental status compromised his ability to knowingly and voluntarily waive his *Miranda* rights, to assist defense counsel, or to be involved in trial decisions. Finally, we have no way of knowing what result a mental status evaluation would have produced in the trial court, what conclusion a mental-health expert retained by defense counsel would have reached, or whether such an evaluation would have assisted Simpson. Therefore, Simpson also cannot establish that he was prejudiced by his attorney's failure to obtain a mental-status evaluation. The first assignment of error is overruled.

*Simpson PC, supra.*

The standard for evaluating a claim of ineffective assistance of trial counsel is well known

and was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's

performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218. Without expressly citing *Strickland* or Ohio case law adopting the same standard, the Second District applied the *Strickland* standard in concluding that Simpson did

not suffer ineffective assistance of trial counsel in the ways he claimed, because he had not demonstrated deficient performance or resulting prejudice.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Respondent relies on this precedent to assert this Court should defer to the Second District's decision in post-conviction (Return, ECF No. 8, PageID 1957).

In his Reply, Simpson flatly asserts that he was incompetent to stand trial (ECF No. 15, PageID 2185). This assertion contradicts the finding by the Common Pleas Court and the Second District that Simpson did not claim in post-conviction that he was incompetent to stand trial. Simpson nowhere asserts that this finding is an unreasonable determination of the facts in light of the evidence presented nor does he anywhere cite to a place in the record where Simpson claimed to be incompetent to stand trial. That is a key finding. It formed the basis of the Second District's conclusion that, absent an established claim of incompetence, the trial would have occurred in any event. Of course Simpson had a right not to be tried at all so long as he was incompetent, but he did not claim in the state courts that he was in fact incompetent.

Apparently the most Simpson claims he told trial attorney Bobby Joe Cox is that he had a learning disability. This would have alerted Cox to be careful in communicating with him to be sure he understood, but it is not a defense, unlike the situation in a capital case, where a finding of intellectual disability (or mental retardation as it was formerly called) is a complete defense to

execution.

Simpson asserts in his Reply that a trial attorney performs deficiently when he does not seek a mental evaluation if presented with sufficient indicia of incompetence (ECF No. 15, PageID 2185-86, citing *United States v. Dubrule*, 822 F.3d 866, 881 (6th Cir. 2016).  While the *Dubrule* court did adopt that proposition of law in the abstract, it found no ineffective assistance of trial counsel from failure to move for a competency evaluation in that case and of course *Dubrule* was decided on direct appeal where there is no question of deference to a state court determination.

In post-conviction Simpson relied on school and Social Security Administration records which his present counsel claims would have been "immediately apparent to trial counsel."  But there is no evidence, for example, that his mother, who provided an affidavit in post-conviction, ever brought these materials to Cox's attention.  How would they have been "immediately apparent"?

Petitioner cites recent Sixth Circuit and Supreme Court precedent on the determination of intellectual disability (Reply, ECF No. 15, PageID 2187, citing *Williams v. Mitchell*, 792 F.3d 606, 621 (6th Cir. 2015), citing *Hall v. Florida*, 134 S. Ct. 1986, 188 L. Ed. 2d 1007 (2014)).  Critically, both *Williams* and *Hall* are capital cases where a finding of intellectual disability is literally the difference between life and death under *Atkins v. Virginia*, 536 U.S. 304 (2002).  But a finding of intellectual disability, while it precludes a death sentence, does not equate to a finding of incompetency to stand trial.  Intellectual disability would not have been a defense here and, as noted above, Simpson did not claim in the state courts to have been incompetent to stand trial.

Simpson also objects to the state courts' reliance to show his competency on his conduct in police interviews[1] (Reply, ECF No. 15, PageID 2187-88).  But here Simpson again relies on

---

[1] These were video recorded in accordance with best police practice so the trial court could see Simpson's conduct for itself, rather than depending on oral testimony.

Supreme Court precedent about determining intellectual disability (not competency to stand trial) in a capital case, *Brumfield v. Cain,* 135 S. Ct. 2269 (2015).

Petitioner next objects that "the state court missed the mark in not evaluating the prejudice prong of *Strickland*." (Reply, ECF No. 15, PageID 2188). The Magistrate Judge finds that is a misreading of *Simpson PC.* It quoted the trial court's finding that Simpson had not shown that a mental status evaluation would have affected the outcome of the trial. *Id.* at ¶ 11, quoting the trial court decision. For its own part, it noted that it had no way of determining from the evidence presented in post-conviction "whether such an evaluation would have assisted Simpson." *Id.* at ¶ 14. While the Second District did not label these conclusions as related to the prejudice prong of *Strickland*, that is plainly what they were without labeling. Without showing that the omitted actions of trial counsel would probably have affected the outcome, a defendant has not shown prejudice from whatever trial counsel failed to do.

The Second District's conclusion on this ineffective assistance of trial counsel sub-claim is neither an objectively unreasonable application of *Strickland* nor based on an unreasonable determination of the facts in light of the evidence presented. It is thus entitled to deference under 28 U.S.C. § 2254(d)(1) and (d)(2).

**Sub-claim Two: Failure to Call Terrence Jones as a Witness**

In his second sub-claim, Simpson asserts Bobby Joe Cox provided ineffective assistance of trial counsel when he failed to call Terrence Jones as a witness. This was Simpson's second assignment of error on post-conviction appeal and the Second District decided it as follows:

> **[*P5]** As a means of analysis, we begin with Simpson's second assignment of error, which asserts that the trial court erred in

denying post-conviction relief predicated on his trial counsel's ineffective assistance due to failure to "interview witnesses." In his appellate brief, Simpson actually identifies only one witness, Terrence Jones, whom his attorney failed to interview. According to Simpson, Jones gave a statement to police and identified a co-defendant other than Simpson as the person he saw fire a fatal shot inside the unlicensed liquor establishment. Simpson asserts that this statement "is consistent with [his] innocence of the murder because Jones puts the guns in the hands of the other two defendants." (Appellant's brief at 19). Simpson's trial counsel admits that he did not interview Jones, although he did review Jones' statement to police. (Affidavit, Doc. #36).

 **[\*P6]**  The trial court rejected Simpson's argument, finding that it did not warrant even an evidentiary hearing. The trial court reached this conclusion for multiple reasons. It first concluded that Jones' police statement was "ambiguous concerning whether Mr. Simpson or one of his companions shot [victim Hank] Sanders," apparently because the statement only provided a vague physical description of the three co-defendants, including the shooter. (Doc. #60 at 10). The trial court noted Simpson's failure to present an affidavit from Jones clearly stating that Simpson did not shoot anyone. (*Id.*) The trial court then continued:

> It is also noted that Terrence Jones was shown photospreads regarding Keron Simpson, Earl Moon, and Daviontae Norvell. Mr. Jones was not able to identify Mr. Norvell, but he did identify Mr. Simpson and Mr. Moon as participants in the aggravated robberies and murders at issue. This is consistent with the trial testimony of Shawn Dentel, Erika Peck, and Annette Dillard with each witness identifying Mr. Simpson as a participant in the aggravated robberies and as the person who shot Hank Sanders.

> The State's theory was that Mr. Simpson shot Mr. Sanders and that Mr. Moon shot Michelle Carter. However, Mr. Simpson was also convicted of Ms. Carter's murder, and Mr. Moon was convicted of not only Ms. Carter's murder but also Mr. Sanders' murder. Given this, and even assuming that Mr. Jones would testify that either Mr. Moon or the third participant shot Mr. Sanders, such testimony would not change the trial's outcome because Mr. Simpson, as a participant in the aggravated robberies, is guilty of each murder even if he did not fire the weapon that fatally wounded either Mr. Sanders or Ms. Carter. It is, thus, concluded that [defense counsel Bobby Joe] Cox's failure

to interview Mr. Jones and pursue the suggested contradiction concerning who shot Mr. Sanders would not have changed the trial's outcome. It is, therefore, concluded that Mr. Simpson has not met his initial burden to establish a substantial basis that Mr. Cox's failure to interview Terrence Jones would have changed the trial's outcome. As such, this contention may be dismissed without a hearing through summary judgment. This conclusion leads to the further conclusion that Keron Simpson's motions relating to Terrence Jones' statement are appropriately overruled.

(*Id.* at 11).

 **[\*P7]** On appeal, Simpson completely ignores the trial court's observation that he was guilty of murder, as an aider and abettor, even if we accept, arguendo, that he did not personally shoot Sanders. (Appellant's brief at 19-20; Reply brief at 3). We believe the trial court was correct. Simpson has not shown any possibility that the outcome of his trial would have been different if defense counsel had interviewed Jones. Even if Jones would have identified someone else as the shooter, Simpson still would have remained guilty of murder as an aider and abettor. Accordingly, the second assignment of error is overruled.

*Simpson PC*.

Thus both the Common Pleas Court and the Second District focused their analyses on the prejudice prong of *Strickland*, concluding that Simpson would have been convicted of murder as an aider and abettor even if Jones had testified, assuming he would testify consistently with his police interview[2]. Simpson's Reply does not address this aider and abettor conclusion of the Ohio courts (ECF No. 15, PageID 2189-90). However, it is persuasive to the Magistrate Judge. If Simpson would have been convicted of both murders even with Jones' testimony, then there was no prejudice in failing to call him. The Second District's decision on this point is entitled to

---

[2] Both courts noted that Jones failed to provide an affidavit in post-conviction as to what his testimony would have been.

deference under 28 U.S.C. § 2254(d)(1).

## Sub-claims Three and Four: Failure to Secure Expert Witnesses

Simpson argues his third and fourth subclaims of ineffective assistance of trial counsel together and they were decided together by the Second District which wrote:

> [*P9] With regard to trial counsel's failure to obtain experts on DNA evidence, witness perception and memory, and eyewitness identification, we do not know what such experts would have concluded, or whether they would have aided Simpson's defense, because his petition for post-conviction relief is devoid of evidence outside the record from such experts. We recognize that Simpson's request for appointment of experts who theoretically might have supplied additional evidence was denied, but we deal with that issue in our analysis of his sixth, seventh and eighth assignments of error. Absent evidence outside the record to support his claim that failure to retain experts was prejudicial to him, Simpson cannot succeed on his post-conviction claim based on trial counsel's failure to secure such experts. Accordingly, his third, fourth, and fifth assignments of error are overruled.

*Simpson PC.*

Here again the state court emphasis is on lack of proof of prejudice. Simpson argues this puts him in a Catch-22[3] situation because he has been indigent throughout the process and reliant on appointed counsel from the beginning (Reply, ECF No. 15, PageID 2191). The Second District addressed this argument as well:

> [*P15] In his sixth, seventh, and eighth assignments of error, Simpson asserts that the trial court erred in overruling his post-conviction motions for the appointment of experts to evaluate his mental status, DNA evidence, and eyewitness identification/perception. (Appellant's brief at 21). Specifically, the sixth assignment of error concerns the trial court's rejection of his post-conviction request for an order appointing Julie Gentile, M.D.,

---

[3] The reference, perhaps well enough known not to need citation, is to Joseph Heller's novel, Catch-22, published in 1961.

to provide a preliminary review of documents concerning his "mental status." In particular, Simpson wanted Gentile to review the Dayton Public School and Social Security Administration records mentioned above to bolster his postconviction claim that he suffered from a developmental disability. His seventh assignment of error concerns the trial court's rejection of his post-conviction request for an order appointing an expert to review the State's DNA evidence. Finally, the eighth assignment of error concerns the trial court's rejection of his post-conviction request for the appointment of an eyewitness-identification/perception expert to support his post-conviction claim about allegedly faulty eyewitness-identification testimony at trial.

 [*P16]  We see no error in the trial court's denial of Simpson's motions for appointment of the foregoing experts in connection with his petition for post-conviction relief. The short answer to his arguments is that he had no right, statutory or constitutional, to the appointment of experts to assist in his post-conviction relief petition. This court has held that "indigent prisoners are not entitled to funding for experts when pursuing collateral attacks on their convictions." *State v. Hooks*, 2d Dist. Montgomery Nos. 16978, 17007, 1998 Ohio App. LEXIS 5044, 1998 WL 754574, *3 (Oct. 30, 1998). This is so because "[p]ost-conviction relief is not a constitutional right, and it affords a petitioner no rights beyond those granted by the controlling statute, R.C. 2953.23." *State v. Osie*, 12th Dist. Butler No. CA2014-10-222, 2015-Ohio-3406, P 31. "[I]t is not error for a trial court to deny a request * * * for the appointment of an expert in a post-conviction relief petition because Ohio's statute, R.C. 2953.21, does not provide * * * a right * * * to expert assistance." *Id.* at P 40; *see also State v. Bennington*, 4th Dist. Adams No. 12CA956, 2013-Ohio-3772, P 25, fn. 4 (citing cases for the proposition that "R.C. 2953.21 does not provide a right to funding or appointment of expert witnesses or assistance in a post-conviction petition").

 [*P17]  In opposition to the foregoing conclusion, Simpson cites *State v. Mason*, 82 Ohio St.3d 144, 1998 Ohio 370, 694 N.E.2d 932 (1998), *State v. Broom*, 40 Ohio St.3d 277, 533 N.E.2d 682 (1988), and *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). None of these cases, however, involved a petition for post-conviction relief. *Mason, Broom*, and *Ake* were capital cases that involved the appointment of experts to assist at the trial level. Therefore, they are inapposite. The sixth, seventh, and eighth assignments of error are overruled.

*Simpson PC*.  In sum, the Second District held that there was neither a statutory nor a constitutional

right to appointment of these requested experts.  Simpson "submits that, at a minimum, the case should be remanded to the state court with instructions to allow development of the record on these points."  (Reply, ECF No. 15, PageID 2192.)  However, he does not quarrel with the correctness of the Second District statement of law on this point.  The Supreme Court has yet to recognize a constitutional right to the effective assistance of counsel in post-conviction, much less the right to expert assistance in those proceedings[4].  This Court can grant habeas corpus relief only for constitutional violations.  Where there was no constitutional violation in denying expert assistance in post-conviction, this Court lacks the authority to "remand[5]" the case to state court.

Because Simpson did not show that having a DNA expert or an eyewitness identification expert would have made a difference in the outcome of his trial, the decision of the Second District on these sub-claims is entitled to deference under 28 U.S.C. § 2254(d)(1).

**Ground Two:  Denial of Fair Trial by Admitting Unreliable Eyewitness Identification**

In his Second Ground for Relief, Simpson claims he was denied a fair trial when the trial court admitted a constitutionally unreliable eyewitness identification (ECF No. 1, PageID 34).

Respondent argues this claim is procedurally defaulted because Simpson never pursued his direct appeal to the Ohio Supreme Court.  Simpson replies that the state courts never enforced this procedural default against him because they decided the claim on the merits in post conviction (Reply, ECF No. 15, PageID 2193.

---

[4] Compare *Martinez v. Ryan*, 566 U.S. 1 (2012), which recognized only an equitable exception to the procedural default doctrine in habeas corpus where a petitioner had been deprived of a decision on the merits of a substantial ineffective assistance of trial counsel claim by the ineffective assistance of post-conviction counsel.
[5] Because habeas is an original as opposed to an appellate process, a habeas court cannot remand a case to state court. However, the equivalent relief can be granted in the form of a conditional grant of the writ.

Simpson's first assignment of error on direct appeal was that his motion to suppress should have been granted "because the identification was unreliable." *Simpson Direct* at ¶ 39. Police failure to comply with the statute on the subject, Ohio Revised Code § 2933.83, as well as federal constitutional authority, was relied on. *Id.,* citing *Neil v. Biggers*, 409 U.S. 188 (1972). When Simpson raised the unreliable identification claim in post-conviction, the Second District decided it as follows:

> **[*P18]** In his ninth assignment of error, Simpson argues that the trial court erred in rejecting his post-conviction claim for relief based on allegedly faulty eyewitness identification. Specifically, he complains that his "right to a fair trial" was violated "by the admission of an unfair eyewitness identification procedure." (Appellant's brief at 29). This assignment of error lacks merit. Because Simpson's post-conviction relief petition presented no evidence outside the record to support his eyewitness-identification challenge, res judicata applies. Moreover we specifically dealt with asserted error in the eyewitness identification in his direct appeal. Accordingly, the ninth assignment of error is overruled.

*Simpson PC.*

Contrary to Simpson's assertion, the Second District did enforce Ohio's criminal *res judicata* rule against him. Ohio's doctrine of *res judicata* in criminal cases, enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967), is an adequate and independent state ground. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001). The Ohio courts have consistently enforced the rule. *State v. Cole*, 2 Ohio St. 3d 112 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16 (1981). Simpson has not offered any excusing cause and prejudice for his failure to appeal to the Ohio Supreme Court or

his failure to take this claim outside the res judicata rule by presenting evidence *dehors* the record in post-conviction.

Simpson's Second Ground for Relief should be dismissed as procedurally defaulted.


**Ground Three:  Violation of the Right Against Self-Incrimination**


In his Third Ground for Relief, Simpson asserts he was deprived of his right against self-incrimination.

Respondent asserts this claim is procedurally defaulted in the same way as the Second Ground, to wit, it was raised on direct appeal to the Second District, but no further direct appeal to the Ohio Supreme Court was taken (Return, ECF No. 8, PageID 1976).

Simpson replies that "[t]his issue hinges on Simpson's arguments regarding his incompetency . . . [which are incorporated] as if rewritten herein."  (Reply, ECF No. 15, PageID 2193.)

Simpson raised this claim as his tenth assignment of error on post-conviction appeal.  The Second District acknowledged that the claim had been raised on direct appeal, but did not invoke *res judicata* to decline to address it on the merits.  Instead, it held:

> **[\*P19]**  In his tenth assignment of error, Simpson contends the trial court erred in rejecting his post-conviction claim for relief based on an alleged violation of his constitutional right against self-incrimination. In support of this claim, Simpson argued in his petition that the admissibility of various custodial statements he made had been litigated below "without considering his mental status." (Doc. #8 at 9). The trial court rejected this argument, reasoning: "The material[s] Mr. Simpson has presented in support of this argument—school and social security records—fail to demonstrate that Mr. Simpson's mental status was such that he could not understand his *Miranda* rights and knowingly waive such rights." (Doc. #60 at 12).

**[\*P20]**  On appeal, Simpson simply cites a law review article to support the proposition that "mentally retarded" individuals do not understand *Miranda* rights. (Appellant's brief at 29-30). He then asserts that the admissibility of his statements "rested on a foundation that did not have all of the facts." (*Id.* at 30).

**[\*P21]**  The record reflects that Simpson filed a suppression motion that addressed, among other things, custodial statements he had made to police. He sought suppression of the statements, challenging the validity of his waiver of his *Miranda* rights prior to making the statements. The trial court filed a decision, entry, and order overruling Simpson's motion. In relevant part, the trial court found that he had been advised of his *Miranda* rights prior to custodial interrogations on December 27, 2010 and December 28, 2010 and that, on each occasion, he validly had waived those rights. (Nov. 8, 2011 decision, entry, and order at 9-11). The trial court specifically found "nothing to suggest" that a "cognitive defect" or anything else prevented Simpson from making a valid waiver. (*Id.*). On appeal, this court rejected Simpson's challenge to the voluntariness of his statements and his *Miranda* waiver. *State v. Simpson*, 2d Dist. Montgomery No. 25069, 2013-Ohio-1072, P 51-58. As set forth above, the trial court subsequently found that Simpson's post-conviction evidentiary materials failed to raise a viable claim regarding the admissibility of his statements to police.

**[\*P22]**  We see no error in the trial court's rejection of Simpson's post-conviction claim addressing whether his custodial statements were admissible. We reach this conclusion for at least two independent reasons. First, a review of the trial transcript reveals that the State neither introduced any of Simpson's custodial statements into evidence nor presented any testimony regarding what those statements were. Because the State did not use the challenged statements, we see no basis for post-conviction relief premised on the statements being made in violation of Simpson's constitutional rights. Second, in any event, the materials accompanying Simpson's petition failed to support his claim that his "mental status" resulted in him making involuntary or otherwise inadmissible statements. Those materials included the Dayton Public School and Social Security Administration records discussed above as well as affidavits from Simpson and his mother. The records show that Simpson received low grades in school, that he participated in a special-education program, that he had a full-scale I.Q. of 53, and that he was classified as "mildly mentally retarded." The affidavits state that Simpson was in special-education classes, that he had a learning disability, that he took Ritalin as a child, and

that he received Supplemental Security Income benefits. (See affidavits accompanying Doc. #8).

[*P23] In our view, the foregoing evidence failed to support a finding that Simpson's waiver of his *Miranda* rights was less than knowing, intelligent, and voluntary or that his statements themselves were involuntarily made. The mere fact that Simpson may have a learning disability or suffer from "mild mental retardation" does not necessarily negate his ability to make a knowing, intelligent, and voluntary statement to police. In his reply brief, Simpson himself admits that he needs testimony from a mental-health expert to support the allegations in his tenth assignment of error. (Appellant's reply brief at 5). He also acknowledges that his lack of such evidence "would require the denial of this assignment," but claims that he cannot afford to hire an expert. (*Id.*). As explained in our analysis of Simpson's sixth, seventh, and eighth assignments of error, however, he had no right to court-appointed experts in post-conviction-relief proceedings. Accordingly, the tenth assignment of error is overruled.

*Simpson PC.*

Simpson's Reply focuses, as noted above, on his incompetency claim. For the reasons given above as to the First Ground for Relief, that argument is not well taken.

Independently of the incompetency claim, the Second District found that Simpson's statements to the police, whether or not they were voluntary under *Miranda v. Arizona*, 384 U.S. 436 (1966), were not admitted in evidence against Simpson. *Simpson PC* at ¶ 22. That factual finding of the Second District, based on its review of the trial transcript, is entitled to deference in the absence of clear and compelling evidence to the contrary. Simpson offers no such evidence. The Fifth Amendment forbids convicting persons on the basis of admissions that have been coerced. But where no such admission, voluntary or involuntary, is admitted in evidence, the person has not been convicted in violation of the Fifth Amendment. To put it another way, the Fifth Amendment does not create a free-standing right against police coercion of admissions, but rather a right to prevent those admissions to be used in convicting a person of a crime.

The Second District's decision on the tenth assignment of error is therefore entitled to deference under 28 U.S.C. § 2254(d)(1):  it is not an unreasonable application of *Miranda*.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

March 9, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).