# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

KERON D. SIMPSON,

    Petitioner,    :  Case No. 3:17-cv-298

 - vs -          District Judge Thomas M. Rose
               Magistrate Judge Michael R. Merz

WARDEN,
 Lebanon Correctional Institution,
               :
    Respondent.

# SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 17) to the Magistrate Judge's Report and Recommendations (ECF No. 16) recommending the Petition be dismissed with prejudice. Judge Rose has recommitted the case for reconsideration in light of the Objections (ECF No. 18).

Simpson, who is assisted by appointed counsel, raises seven objections which will be dealt with *seriatim*.

**Objection One: Whether Simpson Raised His Claim of Incompetence to Stand Trial in the State Courts.**

Simpson first objects to the Magistrate Judge's conclusion that he never raised his incompetence to stand trial in the state courts (Objections, ECF No. 17, objecting to conclusion at Report, ECF No. 16, PageID 2204.) The objected-to passage reads:

> In his Reply, Simpson flatly asserts that he was incompetent to stand trial (ECF No. 15, PageID 2185). This assertion contradicts the finding by the Common Pleas Court and the Second District that Simpson did not claim in post-conviction that he was incompetent to stand trial. Simpson nowhere asserts that this finding is an unreasonable determination of the facts in light of the evidence presented nor does he anywhere cite to a place in the record where Simpson claimed to be incompetent to stand trial. That is a key finding. It formed the basis of the Second District's conclusion that, absent an established claim of incompetence, the trial would have occurred in any event. Of course Simpson had a right not to be tried at all so long as he was incompetent, but he did not claim in the state courts that he was in fact incompetent.

*Id.*

Simpson objects "the Magistrate Judge ignores the fact that Simpson did in fact challenge the voluntariness of his plea in the Ohio courts during his post-conviction litigation." (ECF No. 17, PageID 2217.) To prove this point, Simpson states, without citing the record, that he alleged ineffective representation of counsel in his petition for post-conviction relief under Ohio Revised Code § 2953.21. When that petition is examined, it plainly does not contain a claim that the plea was involuntary. Instead, it asserts ineffective assistance of trial counsel because, *inter alia*, "Petitioner's trial counsel did not have Petitioner's mental health status reviewed by a mental health professional." (Post-Conviction Petition, State Court Record, ECF No. 7, Ex. 18, PageID 373.)

Simpson argues that he could not have raised a direct incompetence to stand trial claim in post-conviction, but only an ineffective assistance of trial counsel for failure to investigate competence (Objections, ECF No. 17, PageID 2218). Not so. Ohio courts are authorized under Ohio Revised Code § 2953.21 to grant relief whenever a judgment is unconstitutional. Had the Common Pleas Court found, on evidence presented in post-conviction, that the guilty pleas were involuntary because Simpson was incompetent to enter it, they could have vacated the plea. But

2

that is not the claim Simpson made. Instead he asserted his counsel was ineffective for not investigating his competence. Those are distinctly different claims.

Simpson is correct in asserting that competence to stand trial encompasses competence to consult with counsel. "[T]he standard for competence to stand trial is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Dusky v. United States*, 362 U.S. 402 (1960), *accord, Drope v. Missouri*, 420 U.S. 162, 171 (1975). In *Godinez v. Martin*, 509 U.S. 389 (1993), the Supreme Court held that the same standard applied to determining competence to plead guilty. Simpson concludes from this that "[t]here is no way the state courts could have parsed out competency to assist counsel from competency to stand trial. Thus reliance [by the Magistrate Judge] on the state finding of waiver as to this issue is misplaced." (Objections, ECF No. 17, PageID 2218.)

But this is **not** the distinction the state court made. Instead, the Second District distinguished between a claim of ineffective assistance of trial counsel for failure to obtain a mental evaluation – a claim Simpson did make in post-conviction – from a claim of incompetence – a claim both the Common Pleas Court and the Second District found Simpson did not make. *State v. Simpson*, 2016-Ohio-1266, 55 N.E. 3d 905, ¶ 11, 2016 Ohio App. LEXIS 1167 (2nd Dist. Mar. 25, 2016), quoted in Report, ECF No. 16, PageID 2200. If the claim of incompetence to stand trial or to plead guilty was actually made in the state court, Simpson should be able to cite the place in the record where the claim was made, but he has not done so.

**Objection Two: The Magistrate Judge Ignored Simpson's Immediately Apparent Head Trauma**

Simpson objects that he has "head trauma that is immediately apparent upon viewing" and "an IQ of 53." (Objections, ECF No. 17, PageID 2219.) Where in the record is there any evidence of the head trauma or the IQ before the post-conviction Petition was filed? Simpson asserts his "inability to comprehend was and is immediately apparent" *id.,* but it was not apparent to the trial court judge after seeing Simpson in person and reviewing the video records of his police questioning. On what evidentiary basis, then, can present counsel assert that his inability to understand "is immediately apparent"? A habeas corpus court can reverse a factual finding of the state courts only on a showing that the finding is contradicted by clear and convincing evidence that was before the state courts. 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, 563 U.S. 170 (2011).

**Objection Three: The State Court Process for Determining Competency Violates Federal Law**

In his third objection, Simpson criticizes the Ohio courts for basing their determination of Simpson's competency solely on the video interviews. He likewise criticizes the Magistrate Judge for accepting that method (Objections, ECF No. 17, PageID 2219, citing *Brumfield v. Cain,* 135 S.Ct. 2269 (2015)).

The Report distinguished *Brumfield* because it discusses the process for determining intellectual disability, not competency. The reason for the distinction is that incompetency is a bar to trial or a guilty plea, whereas intellectual disability is a bar to imposition of the death

penalty. See *Atkins v. Virginia*, 536 U.S. 304 (2002).[1]

While Simpson asserts the Ohio courts "did not follow federal law" in determining his competence, he does not cite Supreme Court authority for what that process must be. He relies on *Johnson v. Zerbst*, 304 U.S. 458 (1938). The question in *Johnson* was not whether the habeas petitioner had been competent to stand trial, but whether waiver of counsel had been knowing, intelligent, and voluntary, an issue on which the habeas trial court had made no finding; the case was remanded for such a finding. *Johnson* does not discuss the process a state trial court must follow to determine competency.[2]

A person who is mentally incompetent may not be tried for a crime so long as the incompetence continues. *Bishop v. United States*, 350 U.S. 961(1956). This fundamental right, now protected by the Due Process Clause of the Fourteenth Amendment, has firm roots in the common law. *Drope v. Missouri*, 420 U.S. 162, 171 (1975), citing 4 Blackstone, Commentaries 24. To protect this right, a State must adopt and observe adequate procedures for determining whether a person is competent to stand trial. *Pate v. Robinson*, 383 U.S. 375 (1966). It is not unconstitutional to presume competence, as Ohio law does, and to place the burden of proving incompetence on a criminal defendant. *Medina v. California*, 505 U.S. 437(1992). "[W]here there is substantial evidence of a defendant's incompetence at the time of trial, a trial judge has the duty to order a hearing *sua sponte*." *Stewart v. Morgan,* 232 Fed. Appx. 482, 488; 2007 U.S. App. LEXIS 11804 (6th Cir. 2007), *quoting Pate v. Smith*, 637 F.2d 1068 (6th Cir. 1981).

Thus the question in this case is not whether viewing the video record of interviews would be in general a sufficient process for determining competency if incompetency were

---

[1] Of course, a person must be competent at the time of his or her execution. *Ford v. Wainwright*, 477 U.S. 399 (1986). If a person is incompetent to stand trial, *a fortiori* he is also incompetent to have a capital case against him tried to verdict.
[2] *Johnson* was decided ten years before federal prisoners were denied access to habeas corpus in almost all cases and remanded to the remedy under 28 U.S.C. § 2255.

raised, but whether these particular video records or anything else in the record was sufficient to constitute "substantial evidence" of incompetence. Simpson does not point to any such "substantial evidence." In particular, he does not claim that the video records of interviews constitute such evidence, but merely that reviewing those records was not enough. If Simpson had raised the issue of incompetency or if there were some other "substantial evidence" of incompetency that the trial judge saw, then the Magistrate Judge would agree that viewing the video records would not be enough. Instead, the trial judge would have had to refer Simpson for a mental status evaluation and conduct a hearing to review the results. But, again, there is no showing that Simpson claimed incompetence and no reference to record evidence the trial judge would have observed that would have caused him to raise the issue *sua sponte*.

**Objection Four: Error in Finding Lack of Prejudice**

The Report recommends deferring to the Second District's finding that Simpson suffered no prejudice from his counsel's failure to seek a mental health evaluation (ECF No. 16, PageID 2206). Petitioner objects that "all facts available lead to a conclusion that Simpson would have been found incompetent to stand trial." (ECF No. 17, PageID 2221.) But the record includes no opinion of a mental health expert, such as Simpson contends his lawyer should have hired, that he was incompetent. Instead, it includes school records, Social Security records, and an IQ test score of 53 at some point in time. These are evidence of intellectual disability, not incompetence to stand trial. Those two mental health states are not equivalent and Simpson points to no clearly established Supreme Court precedent that equates them. In any event, a determination of intellectual disability does not always compel a finding of incompetency. See, e.g., *United*

States v. Chapple, No. 94-5048, 1995 WL 62147 at *2 (6th Cir. Jan. 6, 1995).

**Objection Five: Probable Conviction as an Aider and Abettor If Terrence Jones Called as a Defense Witness**

Simpson's second claim of ineffective assistance of trial counsel is that his attorney did not call Terrence Jones as a defense witness. The Second District denied this claim for lack of a showing of prejudice because Jones's police statement implicated Simpson in the murders and Simpson was found guilty as an aider and abettor. *State v. Simpson, supra,* at ¶¶ 5-7, quoted in Report, ECF No. 16, PageID 2206-08. The Second District noted that Simpson had ignored the aider and abettor finding on appeal (*Id.* at ¶ 7); the Report noted that Simpson had continued to ignore this finding in his Reply (ECF No. 16, PageID 2208).

In his Objections, Simpson now asserts there is no guarantee he would have been convicted as an aider and abettor (ECF No. 17, PageID 2221, citing *State v. Carradine*, 38 N.E.3d 936 (8th Dist. Sep. 10, 2015) for the required proof for an aiding and abetting conviction). Even assuming *Carradine* correctly states the relevant Ohio law,[3] the claim that the aider and abettor conviction was not supported by sufficient evidence would have had to be raised on direct appeal. Because it was not, that argument was forfeited by the time this case was heard on post-conviction.

---

[3] *Carradine* is an Eighth District precedent, not binding on the Second District, and decided two years after this case was decided on direct appeal on March 22, 2013.

**Objection Six: Catch 22**

Simpson claims he received ineffective assistance of trial counsel when his attorney did not hire an eyewitness identification expert or a DNA expert. The state courts rejected this claim for lack of proof of prejudice. Simpson complains this puts him in a Catch-22 position because he did not have funds to hire such experts in post-conviction. But the law does not allow a habeas court to assume that such experts, had they been available, would have offered compelling favorable evidence. Simpson asks for a remand to order the state courts to develop the record on this point. But that implies authority to order the state courts to fund the hiring of such experts, a proposition without authority.

**Objection Seven: Involuntary Statements to Police**

In his Third Ground for Relief, Simpson claims he was deprived of his right against self-incrimination. The Report concluded this claim was procedurally defaulted because Simpson never appealed to the Ohio Supreme Court (ECF No. 16, PageID 2212-13). Simpson makes no objection to that conclusion.

In part, the Report rejected this claim on the same basis as the first ineffective assistance of trial counsel sub-claim and Simpson agrees in his Objections "that this claim rises or falls on a finding that Simpson was incompetent in the first place to make a statement." (ECF No. 17, PageID 2223). No further analysis is needed on this point.

Finally, the Report concluded that the Second District did not violate clearly established Supreme Court precedent in rejecting this claim because the statements Simpson made to police

were never admitted in evidence (ECF No. 16, PageID 2215-16). Simpson makes no objection to this conclusion.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

March 27, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).